FILED
United States Court of Appeals
Tenth Circuit

September 15, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

MELYNDA VINCENT,

      Plaintiff - Appellant,

v.

MERRICK B. GARLAND, Attorney
General of the United States,

      Defendant - Appellee.

No. 21-4121

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. No. 2:20-CV-00883-DBB)

_____

Sam Meziani, Goebel Anderson PC, Salt Lake City, Utah (Amberly Page, Goebel Anderson PC, Salt Lake City, Utah, and Jeremy Delicino, Jeremy Delicino LLC, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellant.

Kevin Benjamin Soter, Attorney, Appellate Staff (Trina A. Higgins, United States Attorney, Brian M. Boynton, Principal Deputy Assistant Attorney General, Mark B. Stern, Michael S. Raab, Abby C. Wright, Attorneys, Appellate Staff, U.S. Department of Justice, Washington, D.C., with him on the brief), for Defendant-Appellee.

_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Roughly 50 years ago, Congress banned the possession of firearms by convicted felons. Gun Control Act of 1968, § 922(h)(1), Pub. L. No. 90 618, 82 Stat. 1213, 1220 (codified as amended at 18 U.S.C. § 922(g)(1)). After Congress enacted this ban, the Supreme Court held that the Second Amendment guarantees a personal right to possess firearms. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Based on the Court's language, we upheld the constitutionality of the ban on convicted felons' possession of firearms. *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009).

The Supreme Court has recently created a new test for the scope of the right to possess firearms. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). Based on the Supreme Court's creation of a new test, the plaintiff challenges the constitutionality of the ban when applied to individuals convicted of nonviolent felonies. To resolve this challenge, we must consider whether the Supreme Court's new test overruled our precedent. We conclude that our precedent has not been overruled.

1.  **The plaintiff challenges the ban after conviction of a nonviolent felony.**

The plaintiff is Ms. Melynda Vincent, who was convicted of a nonviolent felony (bank fraud). Because of this conviction, Ms. Vincent can't possess a firearm for the rest of her life. *See* 18 U.S.C. § 922(g)(1).

2

Ms. Vincent challenges that prohibition, arguing that it violates the Second Amendment rights of nonviolent felons like herself.[1]

## 2. The Supreme Court hasn't expressly abrogated our precedent on the constitutionality of the federal ban.

To resolve this challenge, we must consider the scope of the Second Amendment. This amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. For over two centuries, the nature of this right was uncertain. In 2008, however, the Supreme Court clarified this right in *District of Columbia v. Heller*, 554 U.S. 570 (2008). There the Court focused on the text and history of the Second Amendment, concluding that it guarantees a right to bear arms unconnected with service in the militia. *Id.* at 579–92. The Court observed that it wasn't "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. We applied this observation in *United States v. McCane* to uphold the constitutionality of the federal ban on felons' possession of firearms. 573 F.3d 1037, 1047 (10th Cir. 2009).

---

[1] Ms. Vincent also challenged a Utah law that prohibited convicted felons from possessing firearms. After Ms. Vincent appealed, however, Utah changed its law to permit certain felons to possess firearms after seven years of good behavior. *See* H.B. 507, 2023 Gen Sess. (Utah 2023). The new law allows Ms. Vincent to possess a firearm, so we dismissed Ms. Vincent's challenge to the old version of Utah's law.

The district court was obligated to apply our precedent. *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990). So the court applied *McCane* and dismissed Ms. Vincent's challenge to the constitutionality of the federal ban. In considering that dismissal, we conduct de novo review. *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). To conduct de novo review, we must consider the current caselaw even if it didn't exist when the district court ruled.

That caselaw includes *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), where the Supreme Court addressed the scope of the Second Amendment.[2] In *Bruen*, the Court concluded that the Second Amendment prohibits a state from requiring gun owners to demonstrate a special need in order to obtain a license to carry a firearm in public. *Id.* at 2134–35, 2156. Ms. Vincent argues that *Bruen* abrogated our precedential opinion in *McCane*.

Like the district court, we're generally obligated to apply our own precedents. *United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021). But an exception exists when the Supreme Court has issued an opinion

---

[2]     The Supreme Court decided *Bruen* during the pendency of the appeal. But we must address the effect of *Bruen* anyway. *See United States v. Novey*, 922 F.2d 624, 629 (10th Cir. 1991) (reasoning that we may consider arguments based on an intervening Supreme Court case—which was decided during the pendency of the appeal—even though the parties did not make those arguments to the district court), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006).

contradicting or invalidating the analysis in our precedent. *United States v. Brooks*, 751 F.3d 1204, 1209–10 (10th Cir. 2014). So we must decide whether the Supreme Court's opinion in *Bruen* contradicted or invalidated our analysis in *McCane*.

In *Bruen*, the Supreme Court created a test requiring consideration of two questions:

1.  Does the Second Amendment's plain text cover an individual's conduct?

2.  If the answer is *yes*, has the government justified the ban by showing that it's consistent with the nation's "historical tradition of firearm regulation"?

142 S. Ct. at 2129–30.

This test didn't exist when we decided *McCane*. But the emergence of a new test doesn't necessarily invalidate our earlier precedent. We addressed a similar issue in *Barnes v. United States*, 776 F.3d 1134 (10th Cir. 2015). The issue there involved the jurisdictional nature of the Federal Tort Claims Act's statute of limitations for suits brought against the United States. Prior to *Barnes*, we had held that the statute was jurisdictional. *Casias v. United States*, 532 F.2d 1339, 1340 n.1 (10th Cir. 1976). But the Supreme Court later created a new framework to assess the jurisdictional nature of statutes of limitations in suits brought against the United States. *Sebelius v. Auburn Reg. Med. Ctr.*, 568 U.S. 145, 153–54 (2013). Though we hadn't used that framework for the Federal Tort Claims

5

Act's statute of limitations, we applied our earlier precedent because the Supreme Court's new framework hadn't contradicted or invalidated our prior characterization of the FTCA's statute of limitations. *Barnes*, 776 F.3d at 1147–48.

Under *Barnes,* we can't jettison *McCane* just because it might have been undermined in *Bruen. Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023). We must instead determine whether *Bruen* indisputably and pellucidly abrogated *McCane. Barnes*, 776 F.3d at 1147.[3]

In *Bruen* itself, the Supreme Court didn't address the ban on felons' possession of firearms. The Court instead addressed the constitutionality of a New York licensing scheme for carrying a handgun in public. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122–24 (2022). In addressing that licensing scheme, the Court articulated a historical test for the scope of the Second Amendment's right to bear arms. *Id.* at 2129–30. For that test, the Court drew upon *District of Columbia v. Heller*, which

---

[3]     *Bruen* expressly abrogated a test in some circuits, which had considered Second Amendment challenges based on tests considering the fit between the means used to carry out a governmental interest and the strength of that interest. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129 (2022); *see United States v. Rahimi*, 61 F.4th 443, 449 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023). But no one suggests that *Bruen* expressly abrogated anything that we had said in *McCane*. Unlike those circuits, we hadn't relied in *McCane* on the means or ends of the ban on felons' possession of firearms. *See United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009).

had recognized a personal right to bear arms. 554 U.S. 570, 595 (2008). In recognizing that right, the Supreme Court considered the text and historical origins of the Second Amendment. *Id*. at 605–20. After this historical discussion, the Court noted that

- "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and

- felon dispossession statutes are "presumptively lawful."

*Id*. at 626–27 & n.26.

In *McCane*, we relied solely on this language from *Heller*,[4] reasoning that the Supreme Court had appeared to recognize the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. 573 F.3d 1037, 1047 (10th Cir. 2009).

Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions.

---

[4]    Judges elsewhere disagree on whether this language in *Heller* had constituted dicta or part of the Supreme Court's holding. *Compare United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (characterizing this language as dicta), *with United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010) (stating that this language was not dicta). We need not resolve that disagreement because we're bound by *McCane* regardless of whether *Heller's* language constituted dicta or part of the holding.

7

First, six of the nine Justices pointed out that *Bruen* was not casting any doubt on this language in *Heller*. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2157 (2022) (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J, concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).[5]

Second, *Bruen* apparently approved the constitutionality of regulations requiring criminal background checks before applicants could get gun permits. In *Bruen*, the Court struck down state regulations that had required the showing of a special need before someone could get a license to carry a gun. 142 S. Ct. at 2123–24, 2156. But the Court added that it wasn't questioning the constitutionality of "shall-issue" licensing regimes. *Id.* at 2138 n.9. These regimes don't require a showing of special need, but they do "often require applicants to undergo a background check" to ensure that the applicant is a "law-abiding, responsible citizen[]." *Id.* (quoting *Dist. of Columbia v. Heller*, 544 U.S. 570, 635 (2008)).

In preserving "shall-issue" regimes and related background checks, the Court arguably implied that it was constitutional to deny firearm licenses to individuals with felony convictions. *Bruen*'s language thus

---

[5]     Elsewhere, two other Justices (Justices Thomas and Gorsuch) have recognized the existence of historical support for the constitutionality of laws prohibiting felons' possession of firearms. *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1540–41 (2020) (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting).

could support an inference that the Second Amendment doesn't entitle felons to possess firearms. *See Range v. Att'y Gen. United States*, 69 F.4th 96, 114 (3d Cir. 2023) (Shwartz, J., dissenting, joined by Restrepo, J.) (inferring from *Bruen*'s approval of criminal background checks "that felon bans" on guns "are presumptively lawful"). *But see Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) (stating that *Bruen*'s apparent approval of criminal background checks, before issuance of a public carry permit, doesn't resolve the constitutionality of the ban on felons' possession of firearms).

Given the six Justices' reaffirmation of the *Heller* language and the Court's apparent approval of "shall-issue" regimes and related background checks, we conclude that *Bruen* did not indisputably and pellucidly abrogate our precedential opinion in *McCane*.

**3.    The ban is constitutional under *McCane*.**

*McCane* squarely upheld the constitutionality of the ban on felons' possession of firearms. *See* p. 2, above. Under *McCane*, we have no basis to draw constitutional distinctions based on the type of felony involved. *See In re: United States*, No. 09-4145, slip op. at 8 (10th Cir. Aug. 13, 2009) (unpublished) (stating that *McCane* had "rejected the notion that *Heller* mandates an individualized inquiry concerning felons pursuant to

§ 922(g)(1)");[6] *accord United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (concluding "that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). *McCane* instead upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm. *See* p. 2, above. We thus follow *McCane* and affirm the dismissal.

---

[6]     *In re: United States* is persuasive but not precedential. 10th Cir. R. 32.1(A).

*Melynda Vincent v. Merrick B. Garland,* No. 21-4121
**BACHARACH**, J., concurring.

The majority opinion explains that the Supreme Court has not indisputably and pellucidly abrogated our precedent in *McCane*. In some circumstances, the Supreme Court's creation of a new standard might implicitly upend our precedent. For example, we might question the continued viability of *McCane* if the Supreme Court's creation of a new test would have required us to view the federal law as unconstitutional. *See, e.g.*, *United States v. Tanksley*, 848 F.3d 347, 349–52 (5th Cir. 2017) (concluding that the Supreme Court's creation of a new test implicitly abrogated a panel precedent when the new test required a different outcome), *supplemented on other grounds by United States v. Tanksley*, 854 F.3d 284 (5th Cir. 2017). But in my view, the constitutionality of the federal law (18 U.S.C. § 922(g)(1)) would remain debatable even under the Supreme Court's new test in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). So even if it were possible for the Supreme Court to implicitly abrogate our precedent, the Court didn't do so in *Bruen*.

Under *Bruen*, the threshold issue is whether the plain text of the Second Amendment covers the individual's conduct. *See* Maj. Op. at 5. The text of the Second Amendment shows that it applies only to the right of *the people* with respect to possession of *Arms*. *See id.* at 3. There's no question

about the applicability of the term *Arms*: The federal ban addresses firearms, which are considered *Arms* under the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 582 (2008) (defining *keep Arms* from the Second Amendment as *have weapons*). But does the term *the people* include individuals convicted of nonviolent felonies?

The answer is debatable. *Bruen* had no occasion to address the scope of *the people* as used in the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2157 (2022) (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . ."). But *Bruen* referred fourteen times to the Second Amendment's protection of *law-abiding citizens*. *Id.* at 2122, 2125, 2131, 2133–34, 2135 n.8, 2138 & n.9, 2150, 2156. These references proved critical to the Court's historical analysis. For example, the Court searched the historical record and found no historical analogues requiring a special need for "law-abiding citizens" to possess guns. *Id.* at 2150, 2156 (2022). The Court contrasted these requirements with background checks or firearm safety courses, which don't intrude on the rights of "law-abiding" citizens. *Id.* at 2138 n.9.

But *Heller* also referred to *the people* as all members of the political community. 554 U.S. at 580. These references led the Third Circuit to conclude that convicted felons are among *the people* protected under the

2

Second Amendment. *Range v. Att'y Gen. United States*, 69 F.4th 96, 101–03 (3d Cir. 2023) (en banc).[1]

If individuals convicted of nonviolent felonies aren't among *the people* protected under the Second Amendment, I would regard the ban as constitutional without further historical inquiry. But if we were to interpret the term *the people* to include individuals convicted of nonviolent felonies, we would need to consider whether the statutory prohibition was "consistent with" our "historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126; *see* Maj. Op. at 5. This inquiry is demanding and subject to differing interpretations. *See Atkinson v. Garland*, 70 F.4th 1018, 1024 (7th Cir. 2023) ("[T]he historical analysis required by *Bruen* will be difficult and no doubt yield some measure of indeterminacy."); *id.* at 1025 (Wood, J., dissenting) (stating that *Bruen*'s historical inquiry, with respect to the law prohibiting felons' possession of firearms, "necessarily will be inconclusive").

Courts can differ on whether historical analogues existed for the statutory prohibition on felons' possession of firearms. In determining whether historical analogues exist, we consider English views dating from the late seventeenth century, the Founders' views in the run-up to adoption

---

[1]    Dictionaries of this era sometimes defined *people* broadly. *E.g.*, Noah Webster, *Am. Dict. of the English Lang.*, *People* (1828) (defining *people* to "comprehend[] all classes of inhabitants, considered as a collective body, or any portion of the inhabitants of a city or county").

of the Second Amendment, and the interpretation of the Second Amendment from its ratification through the end of the nineteenth century. *Bruen*, 142 S. Ct. at 2127.

In the late seventeenth century, English and colonial authorities had categorically prohibited particular groups from possessing guns. *See United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023). But authorities have relied on different grounds for these prohibitions. For example, some judges trace these prohibitions to concern over a group's threat to the political community. *See, e.g.*, *Atkinson v. Garland*, 70 F.4th 1018, 1035 (7th Cir. 2023) (Wood, J., dissenting); *Range v. Att'y Gen. United States*, 69 F.4th 96, 110 (3d Cir. 2023) (Ambro, J., concurring) ("[I]t fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society."). Other judges trace the prohibitions to threats of violence without parsing the traits of individual members. *See, e.g.*, *Jackson*, 69 F.4th at 504 ("But if dangerousness is considered the traditional *sine qua non* for dispossession, then history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons.").

Given the variety of interpretations, judges differ on how they apply these historical analogues. Some judges see no historical basis for bans involving nonviolent felonies. *See Range*, 69 F.4th at 105–06 (concluding

4

that no historical analogue exists to bar possession of firearms by someone
convicted under a state law criminalizing a false statement to obtain food
stamps); *id.* at 109, 112–13 (Ambro, J., concurring) (suggesting that the
Second Amendment protects someone who made a false statement to obtain
food stamps, but not individuals convicted of violent crimes). Other judges
find a historical basis for bans involving any convicted felon. *See Jackson*,
69 F.4th at 505–06; *Range*, 69 F.4th at 113–16 (Shwartz, J., dissenting,
joined by Krause, J.); *id.* at 118–28 (Krause, J., dissenting); *Atkinson v.
Garland*, 70 F.4th 1018, 1035 (7th Cir. 2023) (Wood, J., dissenting).[2]

Given the judicial disagreement over historical analogues for the
federal ban, *Bruen* did not indisputably and pellucidly contradict or
invalidate our precedent in *McCane*. *See United States v. Garza*,
No. 22-51021, 2023 WL 4044442 (5th Cir. June 15, 2023) (unpublished)
(stating that "it is not clear" that *Bruen* requires a court to find 18 U.S.C.

---

[2]    Scholars also disagree on the existence of historical analogues for a
ban on felons' possession of firearms. *Compare* C. Kevin Marshall,
*WhyCan't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695,
714–28 (2009) (stating that the Founders understood that the right to bear
arms for self-defense had not categorically excluded individuals convicted
of crimes), *with* Don B. Kates & Clayton E. Cramer, *Second Amendment
Limitations and Criminological Considerations*, 60 Hastings L.J. 1339–64
(2009) (stating that members of the founding generation recognized that
the sovereign could disarm persons convicted of common-law felonies).

§ 922(g)(1) unconstitutional on its face or as applied). So *McCane* controls
Ms. Vincent's appeal and requires us to affirm the dismissal.[3]

---

[3]     Ms. Vincent argues that adherence to *McCane* would "prevent any
district court from ever applying the *Bruen* test. Accordingly, *Bruen* has
implicitly overruled *McCane*." Appellant's Reply Br. at 2. But that's not
necessarily true. *McCane* addressed only the federal ban on possession by
convicted felons. Given the limited scope of the issue in *McCane*, our
opinion there doesn't necessarily prevent application of *Bruen* to
challenges involving the constitutionality of other gun laws.