CASE NO. 21-4121

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

MELYNDA VINCENT,
*Plaintiff-Appellant*,
v.
MERRICK GARLAND, et. al.,
*Defendants-Appellees*

_____

On Appeal from the United States District Court,
District of Utah
Honorable Judge David Barlow
Case No. 2:20-cv-00883-DBB

_____

## REPLY BRIEF OF APPELLANT MELYNDA VINCENT

Oral Argument Requested

_____

Sam Meziani (9821)
Amberly Page (17095)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah  84111
Telephone: (801) 441-9393
SMeziani@gapclaw.com
APage@gapclaw.com

Jeremy Delicino (9959)
JEREMY DELICINO LLC
9 Exchange Place, Suite 600
Salt Lake City, Utah 84111
Telephone:  (801) 364-6474
jeremy@jeremydelicino.com

*Attorneys for Appellant*

## **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

ARGUMENT ....................................................................................................2

   I.  *Bruen* Effectively Overruled *McCane* ...............................................2

   II.  Mindy Vincent's Possession of a Firearm is Covered by the Text of the
       Second Amendment ........................................................................2

   III. There is No Historical Tradition of Disarming Non-Violent Felons ..............6

       A.  Ratification Proposals..............................................................7

       B.  1688 English Statute Disarming Catholics.................................9

       C.  Slave Codes ............................................................................10

       D.  Revolutionary War ..................................................................12

       E.  Death Penalty Statutes.............................................................13

CONCLUSION ................................................................................................15

CERTIFICATE OF COMPLIANCE....................................................................17

CERTIFICATE OF DIGITAL SUBMISSION ......................................................18

CERTIFICATE OF SERVICE ...........................................................................19

ADDENDUM .................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Binderup v. Attorney Gen. United States*, 836 F.3d 336 (3rd. Cir. 2016) ................4

*Burt v. State*, 39 Ala. 617 (Ala. 1866) ....................................................................11

*Dred Scott v. Sandford*, 60 U.S. 393 (1857) ...........................................................12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................1, 2, 3, 4, 5, 6, 9, 10

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)......................................................8

*Folajtar v. Attorney General*, 980 F.3d 897 (3rd Cir. 2020)...............................7, 8

*Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142 (10th Cir. 2016) ...............................15

*In re Anastaplo*, 366 U.S. 82 (1961)........................................................................15

*Kanter v. Barr*, 919 F.3d 437 (7th. Cir. 2019)........................................................6, 9

*Korematsu v. U.S.*, 323 U.S. 214 (1944) ..................................................................12

*Marbury v. Madison*, 5 U.S. 137 (1803)...................................................................15

*McDonald v. Chicago*, 561 U.S. 742 (2010) ..............................................................5

*McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022) ..............................................13

*McKowen v. I.R.S.*, 370 F.3d 1023 (10th Cir. 2004) ..................................................8

*Murray v. State*, 9 Fla. 246 (Fla. 1860)...................................................................11

*New York Pistol & Rifle Association v. Bruen,* 142 S. Ct. 2111 (2022),
     213 L. Ed. 2d 387....................................................................................passim

*Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913 (10th Cir. 2022).......4

*U.S. v. Carrero*, ___ F.Supp. 3d ___, 2022 WL 9348792
   (D. Utah Oct. 14, 2022) ....................................................................2

*U.S. States v. Coombes*, ___ F.Supp. 3d ___, 2022 WL 4367056
   (N.D. Okla. Sept. 21, 2022) ...........................................................2

*U.S. v. Cruikshank*, 92 U.S. 542 (1876)........................................................5

*U.S. v. Gray*, No. 22-cr-00247-CNS, 2022 WL 16855696
   (D. Colo. Nov. 10, 2022) ..............................................................2

*U.S. v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138
   (W.D. Okla. February 3, 2023)......................................2, 7, 13, 14

*U.S. v. McCane*, 573 F.3d 1037 (10th Cir. 2009) ....................................2

*U.S. v. Nichols*, 775 F.3d 1225 (10th Cir. 2014) .......................................2

*U.S. v. Rahimi*, ___ F.4th ___, 2023 WL 1459240 (5th Cir. February 2, 2023)...2, 7

*U.S. v. Toledo*, 739 F.3d 562 (10th Cir. 2014)............................................5

*Zivotofsky v. Clinton*, 566 U.S. 189 (2012) ............................................15

## Statutes

18 U.S.C. § 922(g) ........................................................2, 4, 12, 14, 15

18 U.S.C. § 922(g)(8)...........................................................................2, 7

18 U.S.C. § 1344...................................................................................14

Utah Code Ann. § 13-10b-201(2)(b) ...................................................7

Utah Code Ann. § 76-2-402....................................................................5

Utah Code Ann. § 76-10-503 ................................................................15

## Other Authorities

U.S. CONST. amend II.................................................................................passim

1 *The Laws of Maryland, With The Charter, The Bill of Rights, The Constitution of The State, and Its Alterations, The Declaration Of Independence, And The Constitution Of The United States, And Its Amendments* 115 (1811) ................11

A. ROGER EKIRCH, BOUND FOR AMERICA: THE TRANSPORTATION OF BRITISH CONVICTS TO THE COLONIES, 1718–1775 (Oxford University Press, 1987) .........................................................................14

*African American Heritage & Ethnography*, National PARK SERVICE, https://www.nps.gov/ethnography/aah/aaheritage/histContextsE.htm (last visited February 7, 2023) ...........................................................11

AKHIL AMAR, THE BILL OF RIGHTS 51 (1998) ..........................................3

Brief of Amici Curiae, *Cooper v. Attorney General*, No. 22-13893 (11th Cir. February 6, 2023) .....................................................................4

David B. Kopel, *The Natural Right of Self Defense: Heller's Lesson for the World*, 59 SYRACUSE L. REV. 235 (2008) .........................................................5

Exec. Order No. 9102, 7 Fed. Reg. 2165, 2165 (March 18, 1942) .......................12

GEORGE W. DALZELL, BENEFIT OF CLERGY IN AMERICA AND RELATED MATTERS (John F. Blair 1955) ............................................................13

*Grants, Concessions, and Original Constitutions of the Province of New Jersey: The Acts Passed During the Proprietary Governments, and Other Material Transactions Before the Surrender Thereof to Queen Anne* 341 (1753) ...........11

JOHN LOCKE, SECOND TREATISE OF GOVERNMENT § 16 (1690) ...............................5

Joseph G.S. Greenlee, *Avoiding Danger: Why Mere Disrespect for the Law Cannot Justify Disarmament*, Working Draft (Forthcoming 2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4317000 ..........................4

Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249 (2020)..............................6

Kari Lorentson, *18 U.S.C. § 922(g)(1) Under Attack: The Case for As-Applied Challenges to the Felon in Possession Ban*, 93 NOTRE DAME L. REV. 1723, 1739 (2018) .......................................................4

NEIL M. GORSUCH, A REPUBLIC, IF YOU CAN KEEP IT 40 (Crown Forum 2019)....15

Petition for Rehearing En Banc of Plaintiff-Appellant, at 10, *Range v. Attorney General*, No. 21-2835 (3rd Cir. January 3, 2023) .............6, 14

Richard B. Morris, *Benefit of Clergy in America and Related Matters*, 105 U. PA. L REV. 436 (1957) (book review) .....................................................13

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: the Legal Context of the Second Amendment*, 25 L. AND HIST. REV. 139 (2007)...........................................................................6

THOMAS HOBBES, LEVIATHAN 114 (Christopher Brooke ed., Penguin Random House UK 2017) (1651) .......................................................................................5

WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA (2d ed., Philip H. Nickin, 1829) .......................................................8, 9

## **INTRODUCTION**

Two hundred seventeen years after the Second Amendment was ratified, the Supreme Court held the Amendment protects an individual right.[1] The individual right to bear arms "necessarily takes certain policy choices off the table."[2]

> Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think the scope too broad.[3]

After *Heller*, deferential judicial balancing tests were no longer tenable. And in 2022, the Supreme Court in *Bruen* rejected balancing tests altogether. Instead of weighing policy preferences against enumerated individual rights, any regulation seeking to limit Second Amendment rights must comport with the Second Amendment's original understanding.[4]

To be sure, the original understanding of the Second Amendment allows for limits—but only for those persons who threaten public safety. Ms. Vincent fully transformed herself after her non-violent financial offense 15 years ago. She is licensed by the State of Utah to provide mental health therapy.[5] She is a peaceful, productive, and law-abiding citizen who wants to possess a firearm for lawful purposes. Her life has been an exemplar of what courts and society should hope for

---

[1] *D.C. v. Heller*, 554 U.S. 570, 595 (2008).
[2] *Heller*, 554 U.S. at 636.
[3] *Id.* at 634–35.
[4] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131 (2022).
[5] Aplt. App. Vol. 1 at 34–37.

in a citizen who has once transgressed the law. The Government has failed to meet

its heavy burden to deprive Ms. Vincent of her enumerated and fundamental right.[6]

## ARGUMENT

### I.     *Bruen* Effectively Overruled *McCane*

In *U.S. v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), this Court rejected

an as-applied challenge to 18 U.S.C. §922(g) by a criminal defendant. But

*McCane*'s categorical ban would prevent any district court from ever applying the

*Bruen* test. Accordingly, *Bruen* has implicitly overruled *McCane*,[7] and the court

may proceed to the merits.[8]

### II.     Mindy Vincent's Possession of a Firearm is Covered by the Text of the Second Amendment

*Heller* held the Second Amendment applies to "all Americans."[9] Courts

have held felons are included within the Second Amendment's "the people."[10] The

Government has failed to show that "the people" in the Second Amendment means

---

[6] *Bruen*, 142 S. Ct. at 2135.

[7] *See, e.g.*, *U.S. v. Rahimi*, ___ F.4th ___, 2023 WL 1459240 (5th Cir. February 2, 2023) (declaring 18 U.S.C. § 922(g)(8) unconstitutional).

[8] *U.S. v. Nichols*, 775 F.3d 1225, 1230 (10th Cir. 2014) (when panel may depart from circuit precedent).

[9] 554 U.S. at 581.

[10] *See, e.g.*, *U.S. v. Carrero*, ___ F.Supp. 3d ___, 2022 WL 9348792, *2 (D. Utah Oct. 14, 2022); *U.S. v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, *3 (W.D. Okla. February 3, 2023); *U.S. v. Coombes*, ___ F.Supp. 3d ___, 2022 WL 4367056, *4 (N.D. Okla. Sept. 21, 2022); *U.S. v. Gray*, No. 22-cr-00247-CNS, 2022 WL 16855696, *2 (D. Colo. Nov. 10, 2022).

something different than it does in the First and Fourth Amendments. The Government cites Professor Akhil Amar, but he makes clear that "the people" has the same meaning in both amendments: "'[T]he people' at the core of the Second Amendment are the *same people* at the heart of the Preamble and the First Amendment."[11] Just as Mindy Vincent is part of "the people" for purposes of the First Amendment—she can attend the religious services of her choosing and write letters to the editor—and just as Mindy Vincent is part of "the people" for purposes of the Fourth Amendment—officers may not invade her home or harm her body without a warrant or probable cause—Mindy Vincent is part of that same "people" under the Second Amendment.

The Government's suggestion that the Second Amendment may only be claimed by "law-abiding citizens" is neither faithful to the text of the Amendment nor to *Bruen*. Although *Bruen* references "law-abiding citizens" it does so in dicta. *Bruen* did not consider a reformed financial offender like Ms. Vincent, and the text of the Second Amendment does not contain any such limitation. *Bruen,* like *Heller,* prescribes above-all a "methodology centered on constitutional text and history."[12]

---

[11] AKHIL AMAR, THE BILL OF RIGHTS 51 (1998) (emphasis added). *See also id.* at 47 ("[T]he Second Amendment was closely linked to the textually adjoining First Amendment's guarantees of assembly and petition. One textual tip-off is the use of the magisterial Preamble phrase 'the people' in both contexts.").
[12] 142 S. Ct. at 2128–29.

Although *Heller* described felon dispossession statutes as "presumptively lawful" in a footnote,[13] it does not foreclose all challenges. *Heller's* author, Justice Antonin Scalia:

> a Justice famous for his consultations with the dictionary— unlikely inserted the term 'presumptively' without due care. By using such a term, gun regulations against classes of people like felons…may be constitutional on their face, but this need not assume that every scenario will pass constitutional muster.[14]

That § 922(g) is "presumptively" lawful does not mean that, like any legal presumption, it is not subject to rebuttal.[15]

The Government incorrectly claims Mindy Vincent's offense ousts her from the "political community" so that she may be disarmed.[16] This argument fails because the Second Amendment protects an individual right to self-defense, which must be exercised *individually*. "*Heller* found that the Amendment codified a

---

[13] 554 U.S. at 627 n.26.

[14] Kari Lorentson, *18 U.S.C. § 922(g)(1) Under Attack: The Case for As-Applied Challenges to the Felon in Possession Ban*, 93 NOTRE DAME L. REV. 1723, 1739 (2018).

[15] *See, e.g.*, *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 922 (10th Cir. 2022) (good faith presumption under the Freedom of Information Act may be rebutted). *See also Binderup v. Att'y Gen.*, 836 F.3d 336, 367 (Hardiman, J. concurring in part) ("[T]he Supreme Court declined to 'expound upon the historical justifications' for the list of presumptively lawful firearm exclusions in *Heller* … leaving that task to us.") (citation omitted).

[16] (Brief of Federal Appellees, p. 21). *See also* Brief of Amici Curiae, *Cooper v. Attorney General*, No. 22-13893 (11th Cir. February 6, 2023); Joseph G.S. Greenlee, *Avoiding Danger: Why Mere Disrespect for the Law Cannot Justify Disarmament*, Working Draft (Forthcoming 2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4317000.

preexisting right and that this right was regarded at the time of the Amendment's

adoption as rooted in the natural right of resistance and self-preservation."[17] As the

Court "stated in *Heller* and repeated in *McDonald* [*v. Chicago*, 561 U.S. 742

(2010)], individual self-defense is the *central component* of the Second

Amendment right."[18] The right of self-defense is rooted in the political philosophy

of the age, which recognized that people entering into a political compact always

retain the fundamental right of self-defense.[19] The individual right of self-defense

was universally understood as one of the inalienable rights announced in the

Declaration of Independence and secured by the Bill of Rights. Even now Mindy

Vincent possesses a right to self-defense as a matter of law.[20] Thus, to argue that

Mindy Vincent is not a person under the Second Amendment "is at odds with

---

[17] *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring).

[18] *Id.* at 2133 (emphasis in original, cleaned up).

[19] "A Covenant not to defend my selfe from force, by force, is alwayes vod.  For (as I have shewed before) no man can transferre, or lay down his Right to save himself from Death." THOMAS HOBBES, LEVIATHAN 114 (Christopher Brooke ed., Penguin Random House UK 2017) (1651). *See also* JOHN LOCKE, SECOND TREATISE OF GOVERNMENT § 16 (1690) ("I should have a right to destroy that which threatens me with destruction: for, by the fundamental law of nature, man being preserved as much as possible, when all cannot be preserved, the safety of the innocent is to be preferred."); *U.S. v. Cruikshank*, 92 U.S. 542, 553 (1876) (right to bear arms is a pre-existing right "not a right granted by the Constitution"); David B. Kopel, *The Natural Right of Self Defense: Heller's Lesson for the World*, 59 SYRACUSE L. REV. 235 (2008).

[20] *See* Utah Code Ann. § 76-2-402; *U.S. v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014) (right of self-defense under federal law).

*Heller* itself" because the Court interpreted the word "people" as referring to "all Americans."[21]

### III.  There is No Historical Tradition of Disarming Non-Violent Felons

The Government bears a heavy burden to "affirmatively prove" its attempt to ban peaceable felons is supported by a "distinctly similar historical regulation."[22] It is a burden the Government cannot carry because "there is no historical tradition that would justify banning people who have not been convicted of a violent crime from exercising their Second Amendment rights."[23] Scholars have not been able to find any Founding-era statutes expressly imposing, or authorizing the legislature to impose, a firearm ban.[24] The Government's inability to point to any historical regulation covering the subject matter ends the analysis.

Unable to find a remotely similar firearm regulation, the Government grasps at various historical sources, from state proposals that were never enacted to odious

---

[21] *Heller*, 554 U.S. at 581.

[22] *Bruen*, 142 S. Ct. at 2131.

[23] Petition for Rehearing En Banc of Plaintiff-Appellant, at 10, *Range v. Attorney General*, No. 21-2835 (3rd Cir. January 3, 2023). *See also* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 257 (2020) ("[T]here is no historical basis for denying nonviolent felons the right to keep and bear arms."); Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: the Legal Context of the Second Amendment*, 25 L. AND HIST. REV. 139, 142 (2007) ("[A]t no time between 1607 and 1815 did the colonial or state governments … restrict the ownership of guns by members of the body politic.").

[24] *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019).

statutes treating enslaved people as inhuman and depriving them of arms. None of these sources concerns financial felons. It is not this Court's job to "sift the historical materials for evidence to sustain" the statute. [25] The cited sources are not analogous to the challenged statutes, which cover non-violent financial offenders. The Government's sources therefore fail the Supreme Court's test of similarity; they fail to show "how and why" the sources support disarming a peaceful woman who committed a non-violent financial offense.[26]

## A.     Ratification Proposals

The state proposals do not support the Government's claim that it has nearly unfettered discretion to disarm citizens simply by defining an offense as a felony.[27] The limiting language in the state proposals was ultimately omitted from the text of the Second Amendment.[28] And although the Government relies heavily on the Pennsylvania minority proposal, "[a] single failed proposal is too dim a candle to illumine the Second Amendment's scope."[29] To the extent the proposals reveal something about contemporary thought sufficient to allow a court to make

---

[25] *Bruen*, 142 S. Ct. at 2150.
[26] *Id.* at 2133.
[27] *See, e.g., Folajtar v. Att'y Gen.*, 980 F.3d 897, 921 (3rd Cir. 2020) (Bibas, J., dissenting). *See also* Utah Code Ann. § 13-10b-201(2)(b) (unlawfully filming in a theater two times is a felony).
[28] *Rahimi*, 2023 WL 1459240, *8 (declaring 18 U.S.C. § 922(g)(8) unconstitutional and finding the state proposals "cannot counter the Second Amendment's text, or serve as an analogue for §922(g)(8) because they were not enacted").
[29] *Harrison*, 2023 WL 1771138, *3.

"nuanced judgments" about the contemporary understanding,[30] the proposals, construed together, reveal a narrow limitation only: a power to disarm dangerous persons. In interpreting federal statutes, the Supreme Court harmonizes each to give effect to the whole.[31] So harmonized, the proposals support Ms. Vincent.

The New Hampshire proposal did not include felons at all, but only those citizens who "*are or have been in actual rebellion*."[32] The Pennsylvania minority envisioned that the national government could disarm those people committed of crimes—"*for crimes committed*"—but there is no suggestion that this meant all crimes of any kind, including non-violent offenses.[33] The Massachusetts proposal provided the Second Amendment should never be construed to prevent "*peaceable citizens*" from keeping arms.[34] Construing these proposals together, the most reasonable interpretation of the Pennsylvania minority proposal is that the phrase "*unless for crimes committed*" is limited to those offenses which threaten public safety or envisage the armed overthrow of government.  William Rawle's 1829 *A View of the Constitution of the United States*, an influential Founding-era source

---

[30] *Bruen*, 142 S. Ct. at 2130.

[31] *See, Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("It is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another."); *McKowen v. I.R.S.*, 370 F.3d 1023, 1027 (10th Cir. 2004) ("When Congress has enacted two statutes which appear to conflict, we must attempt to construe their provisions harmoniously.").

[32] *Folajtar*, 980 F.3d at 915 (Bibas, J., dissenting).

[33] *Id.*

[34] *Id.*

and invaluable guide to contemporary understanding, confirms this important point: The right "ought not, however, in any government, to be abused to the disturbance of the public peace."[35] Thus, for example, "an assemblage of persons with arms, for an unlawful purpose, is an indictable offence."[36] Taking these sources together, the only limitation on the broad Second Amendment right is the same limitation that Samuel Adams expressed, and the same limitation that Ms. Vincent advances here: governments may only disarm those persons who abuse their rights and threaten the public peace.[37]

### B.    1688 English Statute Disarming Catholics

The Government relies on Parliament's 1688 act to disarm Catholics as evidence of a broad power to disarm classes of people, whether religious, political, or other groups who have "*failed to demonstrate that they would abide by the law.*"[38] This statute, however, does little to reveal the Founders' understanding one century later. "Constitutional rights are enshrined with the scope they were

---

[35] WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA 126 (2d ed., Philip H. Nickin 1829).  *See also Heller*, 554 U.S. at 607. *Heller* cited Rawle's treatise extensively. Rawle, who was appointed by George Washington as U.S. Attorney for Pennsylvania in 1791, shared the contemporary view of the Second Amendment as broad: "No clause in the Constitution could by any rule of construction be conceived to give a congress power to disarm the people." RAWLE, *supra*, at 125.

[36] RAWLE, *supra* note 35, at 126.

[37] *See Kanter,* 919 F.3d at 454 (Barrett, J., dissenting).

[38] (Brief of the Federal Appellees, p. 28)

understood to have when the people adopted them."[39] The Supreme Court has

cautioned that English law and institutions are useful in interpreting the

Constitution only "*as they were when the instrument was framed and adopted*" and

not at other times in English history.[40] In 1789, after defeating Britain in war, the

Founders enacted an Establishment clause which, together with the Second

Amendment, bars any attempt to disarm classes of people based on belief.

Moreover, the Supreme Court has given greater weight to the 1689 Bill of

Rights, which although it excluded Catholics, was a "watershed in English history"

that recognized an individual right to bear arms.[41] The Founders understood "the

right secured in 1689 as a result of the Stuarts' abuses … to be an individual right

protecting against both public and private violence."[42] The 1689 English Bill of

Rights is thus more reflective of the Founders' understanding of the right, and yet

this document does not exclude financial offenders from the fundamental right.

### C.    Slave Codes

The Government cites laws disarming enslaved people, and while

acknowledging such laws are repugnant, nevertheless maintains that such laws,

known as Slave Codes, support "broad legislative authority to disarm classes of

---

[39] *Bruen*, 142 S. Ct. at 2119 (quoting *Heller*, 554 U.S. at 634–35) (emphasis omitted).

[40] *Id.* at 2139 (citation omitted; emphasis in *Bruen*).

[41] *Id.* at 2142.

[42] *Heller*, 554 U.S. at 594.

people who were viewed as untrustworthy."[43] Codes designed to rule over

enslaved people have nothing to teach about legitimate governmental power.

Slave Codes governed all aspects of a legal system based on chattel

slavery.[44] The statutes cited by the Government include a variety of non-firearm

restrictions such as prohibiting the "Harbouring and Entertaining" of enslaved

people for more than two hours; [45] declaring that no Black man or woman "by

receiving the holy sacrament of baptism, is thereby manumitted or set free"; [46] and

providing that no servant or enslaved person may travel more than "ten miles from

the house of his, her or their master…without a note under their hands."[47] Codes

---

[43] (Brief of Federal Appellees, p. 28)

[44] For example, Slave Codes imposed "numerous restrictions to enforce social control: slaves could not be taken away from their owners' premises without permission; they could not assemble unless a white person was present; they could not own firearms; they could not be taught to read or write, or transmit or possess 'inflammatory' literature." *Afr. Am. Heritage & Ethnography*, NAT'L PARK SERV., https://www.nps.gov/ethnography/aah/aaheritage/histContextsE.htm (last visited February 7, 2023). *See also Burt v. State*, 39 Ala. 617, 626 (Ala. 1866) (noting that after "the abolition of slavery and the abrogation of the slave code" enslaved people became subject to the general criminal law); *Murray v. State*, 9 Fla. 246, 251 (Fla. 1860) ("Every slaveholding State has…found it necessary to adopt a slave code, defining the offences of which a slave may be guilty, and affixing the appropriate penalties therefor.").

[45] *Grants, Concessions, and Original Constitutions of the Province of New Jersey: The Acts Passed During the Proprietary Governments, and Other Material Transactions Before the Surrender Thereof to Queen Anne* 341 (1753).

[46] 1 *The Laws of Maryland, With The Charter, The Bill of Rights, The Constitution of The State, and Its Alterations, The Declaration Of Independence, And The Constitution Of The United States, And Its Amendments* 115 (1811).

[47] *Id.* at 110.

whose premise was the inhumanity of enslaved people have no application here.[48]

That the Executive must resort to Slave Codes to support its claim there is some

secret reserve of legislative power tucked away in the Second Amendment

sufficient to disarm "untrustworthy" citizens is persuasive evidence the

Executive's position lacks historical basis. If there were an actual Founding-era

law disarming felons the Executive would have found it. Slave Codes are not

analogous to 18 U.S.C. § 922(g).

### D.    Revolutionary War

Statutes enacted in the wake of the Declaration of Independence while the

Colonies were engaged in a great conflict with Britain are dissimilar. These

statutes were enacted before the Second Amendment and in the exigencies of war.

Although the Nation has struggled to balance individual liberties with the demands

of war,[49] this case does not ask whether the Government can disarm suspected

rebellious citizens during wartime. These statutes are therefore not analogous to

the Government's broad assertion of power to disarm non-violent citizens in

peacetime.

---

[48] *Dred Scott v. Sandford*, 60 U.S. 393, 417 (1857) (recognizing enslaved people as "members of the sovereignty" would entitle them "to the privileges and immunities of citizens," including the right "to keep and carry arms wherever they went").
[49] *See, e.g.*, Exec. Order No. 9102, 7 Fed. Reg. 2165, 2165 (March 18, 1942); *Korematsu v. U.S.*, 323 U.S. 214, 216 (1944) (upholding exclusion of American citizen of Japanese descent based on "[p]ressing public necessity").

### E.     Death Penalty Statutes

Ms. Vincent's brief cites statutes from the 13 original colonies/states concerning passing false or forged notes, offenses that are the same as or closely related to passing a false check.[50] The statutes do not impose the death penalty and more importantly, impose no disability on arms. The Government has failed to show that there are other contemporary laws that are *more similar* to Ms. Vincent's offense. Thus, all available evidence shows an offender like Ms. Vincent would not have been disarmed in 1789.

Assuming arguendo the government could execute a non-violent felon like Ms. Vincent, it does not follow that it can deprive her of all rights if a death-sentence is not carried out.[51] "If a felon is executed, he plainly has no need to

---

[50] (Brief of Appellant, pp. 16–19)

[51] Persons convicted of capital offenses were often given a judicial reprieve, based on the ancient practice of "benefit of clergy." GEORGE W. DALZELL, BENEFIT OF CLERGY IN AMERICA AND RELATED MATTERS (John F. Blair 1955); Richard B. Morris, *Benefit of Clergy in America and Related Matters*, 105 U. PA. L REV. 436 (1957) (book review).  The Government has failed to show that any person granted such reprieve was ever disarmed. This failure is especially notable given the transport of tens of thousands of felons from Britain to the Colonies under the British Transportation Act of 1718. *McGuire v. Marshall*, 50 F.4th 986, 1008 (11th Cir. 2022); A. ROGER EKIRCH, BOUND FOR AMERICA: THE TRANSPORTATION OF BRITISH CONVICTS TO THE COLONIES, 1718–1775 27–28 (Oxford University Press, 1987) ("Convicts represented as much as a quarter of all British emigrants to colonial America during the eighteenth century" and "the predominate offense for which felons were transported was grand larceny.").  No scholar "has identified a single Founding-era law depriving felons of the right to keep and bear arms as a consequence of" receiving a sentence punishable by death.  *Harrison*, 2023 WL

defend himself, but if he is alive, then the right still inheres in him."[52] Congress

and the Executive chose not to impose death as a penalty for bank fraud.[53] Having

chosen not to execute Mindy Vincent for passing a false check for $498.12,

Ms. Vincent retains her fundamental right of self-defense, along with her other

fundamental rights set forth in the Bill of Rights.

In sum, the Government has failed to point to any historical *firearm*

*regulation* that supports application of the challenged statute to Ms. Vincent. The

Government thus fails the *Bruen* test because there is no regulation "distinctly

similar" to 18 U.S.C. § 922(g).

The Second Amendment allows for common sense regulations that protect

public safety.[54] But the Second Amendment does not authorize a blanket ban that,

while covering people who should be disarmed based on their conduct, also

ensnares peaceful and productive citizens like Ms. Vincent.

Our Constitution anticipates the inevitable tendency of majorities to intrude

upon individual rights. Skeptical of claims a newly formed national government

would possess only limited powers and therefore could not threaten the people's

---

1771138, at *7.  For example, a felon named John Pugsley was transported from
Britain to Maryland in 1736. At his death his estate included a firearm among his
meager possessions.  EKIRCH, *supra*, at 181.

[52] *Range* Petition, *supra* note 23, at 15.

[53] *See* 18 U.S.C. § 1344.

[54] *See, e.g., Harrison*, 2023 WL 1771138, at *6–8.

fundamental rights, the Anti-Federalists succeeded in convincing the Philadelphia Convention to adopt a Constitution that contained enumerated rights, and the structure of the Constitution grants the Judicial Branch the authority to enforce the Bill of Rights' various limitations on majority policy preferences.[55] The combination of enumerated rights and separation of powers has become among our Nation's "most important contributions to human liberty."[56] "If we are to pass on that great heritage of freedom, we must return to the original language of the Bill of Rights. We must not be afraid to be free."[57]

## CONCLUSION

This Court should hold 18 U.S.C. § 922(g) and Utah Code Ann. § 76-10-503 violate the Second Amendment as applied. Ms. Vincent requests oral argument.

---

[55] *Marbury v. Madison*, 5 U.S. 137, 178 (1803) ("[I]t is emphatically the province and duty of the judicial department to say what the law is."); *Zivotofsky v. Clinton*, 566 U.S. 189, 197 (2012) (noting that "the constitutionality of a statute … is a decision for the courts") (citation omitted).

[56] NEIL M. GORSUCH, A REPUBLIC, IF YOU CAN KEEP IT 40 (Crown Forum 2019); *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J. concurring) ("Even more importantly, the founders considered the separation of powers a vital guard against governmental encroachment on the people's liberties, including all those later enumerated in the Bill of Rights.").

[57] *In re Anastaplo*, 366 U.S. 82, 116 (1961) (Black, J., dissenting).

DATED: February 14, 2023

 /s/ Sam Meziani
Sam Meziani (9821)
Amberly Page (17095)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah  84111
Telephone: (801) 441-9393
smeziani@gapclaw.com

Jeremy Delicino (9959)
JEREMY DELICINO LLC
9 Exchange Place, Suite 600
Salt Lake City, Utah 84111
Telephone:  (801) 3646474
jeremy@jeremydelicino.com

*Attorneys for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,962 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2301) in 14 point Times New Roman.

DATED: February 14, 2023

*/s/ Sam Meziani*
Sam Meziani
GOEBEL ANDERSON PC

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with SentinelOne Agent, Version 22.2.4.558, last updated December 13, 2022, and this submission is free of viruses.

DATED: February 14, 2023

*/s/ Sam Meziani*
Sam Meziani
GOEBEL ANDERSON PC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2023, I electronically filed the foregoing Reply Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Sam Meziani*
Sam Meziani
GOEBEL ANDERSON PC

# **ADDENDUM**

**EXHIBIT A:**      Founding Era Statutes

**EXHIBIT B:**      Petition for Rehearing En Banc of Plaintiff-Appellant,
*Range v. Attorney General*, No. 21-2835
(3rd Cir. January 3, 2023)

**EXHIBIT C:**      Brief of Amici Curiae, *Cooper v. Attorney General*,
No. 22-13893 (11th Cir. February 6, 2023)